**KINO EXPRESS, INC., Appellant,**

v.

**CONSUMERS COUNTY MUTUAL INSURANCE COMPANY, Appellee.**

No. 03–97–00630–CV

Court of Appeals of Texas, Austin.

Feb. 11, 1999.

Before Justices KIDD, PATTERSON and POWERS.*

JOHN E. POWERS, Justice.

Kino Express, Inc., appeals from a summary judgment recovered by Consumers County Mutual Insurance Company. We will reverse the judgment and remand the cause to the trial court.

## THE CONTROVERSY

Kino operated in Travis and Hays counties a package-delivery service using a number of motor vehicles operated by drivers employed by the company. Based on Kino's application, Consumers issued a commercial automobile-liability policy that became effective May 4, 1994, and by its terms expired after one year.[1] The policy was based on a "fixed rating plan" that did not allow for a change in premium amounts for causes arising after the effective date.

Consumers cancelled the policy effective October 3, 1994, asserting a right to do so because of an "[i]ncrease in hazard due to failure of insured to cooperate with inspectors." The cancellation involved policy provisions that gave Consumers the right to

(1) examine and audit Kino's "books and records as they relate to [t]he policy";

(2) "[m]ake inspections and surveys at any time" relating to "insurability and the premiums to be charged";

(3) cancel the policy for any reason within sixty days of the effective date; and

(4) cancel the policy after sixty days for "[a]n increase in hazard within the control of the insured which would produce an increase in rate."

Item four, the policy basis given by Consumers for cancellation, is inconsistent with the "fixed rating plan" required by the Kino policy but is taken almost verbatim from section (c)(3) of article 21.49–2A of the Texas Insurance Code applicable to *all* commercial automobile-liability insurance policies. Tex. Ins.Code Ann. art. 21.49–2A, § (c)(3) (West Supp.1999).

Kino sued Consumers for a declaratory judgment that Kino's failure to cooperate did not constitute "[a]n increase in hazard" within the meaning of the policy provision and the statute.[2] Consumers' answer in-

---

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. Another insurer actually issued the policy. For convenience, however, we will refer only to Consumers. The distinction is immaterial for purposes of this appeal.

2. Kino also alleged causes of action for violation of certain provisions of the Insurance Code, negligence, and breach of contract, praying also for a declaration that the cancel-

cluded a counterclaim for declaratory judgment that its cancellation of the policy was within the scope of the policy provision and the statute. Consumers recovered summary judgment that its cancellation was justified by the statute, and Kino appealed to this Court.[3]

## THE SUMMARY–JUDGMENT RECORD

We will set out a rather extended description of the materials attached to Consumers' motion for summary judgment.

Barry Randall, a Consumers officer, swore as follows in an affidavit:

[Consumers] cancelled the policy due to an increase in the hazard insured against as indicated on the Notice of Cancellation. The increase in hazard was the direct result of [Kino's] failure and refusal to cooperate with [Consumers'] repeated requests to inspect [Kino's] premises and business operations.

[Kino] also refused to identify the names, addresses and license numbers of its drivers. [Consumers'] premium rates contemplate fleet drivers with satisfactory driving records. When drivers are not identified, [Consumers] is unable to obtain a motor vehicle report on those drivers and consequently ... is unable to determine whether the driving records are satisfactory.

When [Kino] did identify a driver whose record was unsatisfactory, [Consumers] would prepare an endorsement to exclude that driver.

[Kino] refused to sign the endorsements to acknowledge that certain drivers had unsatisfactory driving records and would not be covered by the policy.

Consumers' business records indicate the following transactions with Kino:

lation of the policy was wrongful, an order continuing the policy in force, and money damages.

May 23, 1994. Consumers attempted unsuccessfully to call on Kino to arrange for an inspection. The address supplied by Kino was an apartment residence and no one was available to authorize an inspection.

May 24, 1994. Consumers obtained a telephone number from Kino's insurance agent. Consumers called the number to arrange for an inspection and was told that Kino was no longer at the number. Consumers called several times another number supplied by Kino's insurance agent and was again unsuccessful in reaching Kino. The insurance agent told Consumers that Kino's owner was in Arizona.

July 3, 1994. Consumers' right to cancel the policy for any reason expired.

July 14, 1994. In a letter to Kino's insurance agent dated July 14, 1994, Consumers requested the following: (1) execution and return of policy exclusions applicable to five named drivers employed by Kino; (2) a copy of an accident report pertaining to one named driver employed by Kino who was involved in an accident on January 20, 1994; (3) the complete driver's license numbers for eleven named drivers employed by Kino; and (4) a clarification of the correct date of birth and driver's license number of another named driver employed by Kino.

August 4, 1994. In a letter to Kino's insurance agent dated August 4, 1994, Consumers made a second request for the items designated in Consumers' letter dated July 14, 1994.

August 17, 1994. In a letter to Kino's insurance agent dated August 17, 1994, Consumers pointed out that the items requested in the letters of July 14, 1994, and August 4, 1994, had not been received; in addition, Consumers complained that it had been unsuccessful in contacting Kino to arrange for an inspection.

3. The judgment denied all other relief requested by either party.

August 22, 1994. In a communication to Kino dated August 22, 1994, Consumers requested that it be permitted to make an inspection.

September 12, 1994. Consumers called at an address supplied by Kino. It was a residence and no one was present to authorize an inspection. A telephone number obtained by Consumers was illegible. Consumers contacted Kino's insurance agent who said the "insured" was out of town. Consumers left several messages on the "insured's" telephone-answering machine after calling a number in the telephone book. Consumers called another number supplied by Kino's insurance agent and left a message with a secretary for a supervisor to call Consumers.

September 19, 1994. In a communication to Kino dated September 19, 1994, Consumers notified Kino that the policy was cancelled effective October 3, 1994, because of an "[i]ncrease in hazard due to failure of insured to cooperate with inspectors."

### DISCUSSION AND HOLDINGS

Kino appeals on two points of error. In the first, Kino complains that its alleged failure to cooperate with Consumers does not, as a matter of law, amount to an "increase in hazard which would lead to an increase in rate" as stated in section (c)(3) of article 21.49–2A of the Insurance Code, properly construed. In the second point of error, Kino contends genuine issues of material fact preclude summary judgment in any event.

█ We should first set out our understanding of the applicable rules and terms. The purpose and effect of automobile-liability insurance is to protect the insured against having to pay sums it might become legally obligated to pay because of a liability claim arising from a covered

insured's operation of a covered automobile. *See* Rowland H. Long, *The Law of Liability Insurance* § 1.03, at 1–6 (1991). *The "hazard" in this context is therefore the legal liability that an insured might incur by reason of such a claim against the insured.* "Risk" is the result of a hazard—a chance of loss arising from the bringing of a liability claim. A liability insurer assumes the risk by agreeing, for compensation, to pay any sums the insured might become legally obligated to pay by reason of such a claim. The insurer's compensation is denominated a "premium" or a "rate." *Id.* § 1.02, at 1–5. An insurer has the right to select the risks it will assume. *Id.* § 4A.04, at 4A–13. The identity, number, experience, and status of covered drivers, the character and condition of covered automobiles, and the purposes to which they will be put, are generally material to the insurer's decision whether to accept or reject a risk because they might reasonably be expected to influence the insurer's decision. *See* 6B Appleman, *Insurance Law and Practice* § 42.52, at 9–13 (1979); 6 *Couch on Insurance*, 3D, § 94; 83, at 94–91 (1997).

█ Consumers therefore argues in support of the judgment that employing drivers who have a history of accidents and moving violations, the total number of automobiles involved, their age, mileage, condition, intended use, and places of operation, and perhaps other aspects of Kino's business operations, were all material to Consumers' accepting or rejecting the risk. We agree that any of these factors might enlarge (or diminish) the hazard and the corresponding risk. We do not agree, however, with Consumers' resulting deduction that Kino's *failure to cooperate in supplying information about these factors, in and of itself and as a matter of law, increased the hazard.*[4] Moreover, the rec-

---

4. The policy does not, of course, authorize Consumers to cancel the policy, after sixty days, based upon Kino's failure to cooperate. Consumers' basic position on appeal is that not having the information necessary to ap-

praise the magnitude of the hazard is the same thing as an increase in the hazard, meaning an increase in the likelihood of liability claims against Kino. We disagree. This

ord shows that Consumers accepted the risk *before* knowing the extent of the hazard and cancelled the policy without ever obtaining information necessary to assess the magnitude of the hazard.

Consumers' argument implicitly *assumes* that the information it attempted to obtain from Kino, by either an inspection of Kino's books and records, automobiles, and operations, or in response to Consumers' several requests for specified information, would have increased the hazard had the information been obtained. Nothing in the summary-judgment record establishes that conclusion as a matter of law. The substance of Randall's affidavit is that Kino *failed* to supply or make available the information necessary for Consumers to assess the hazard and the resulting risk. Nothing in the record suggests that the hazard and resulting risk *were* assessed on the basis of information obtained from any source, with the result that Consumers determined that the hazard *had* increased, from the date the policy became effective, owing to matters within Kino's control.

The summary judgment record shows one exception to the foregoing. Kino evidently *did* supply the names and other information pertaining to five drivers among the nineteen or so employed by Kino. According to Randall's affidavit, Consumers rejected *coverage* of these five drivers and, accordingly, requested that Kino execute and return to Consumers documents that would have excluded the five drivers from coverage.[5] Kino failed to execute and return the policy exclusions. From the fact that Consumers rejected coverage of the five drivers, one may *infer* that the information previously supplied by Kino (or obtained from information sup-

plied by Kino) was adverse in some respect. But we are required to indulge the opposite inference in our review of the summary judgment. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 549 (Tex.1985). Moreover, the summary-judgment record does not permit one to conclude as a matter of law that Consumers *cancelled the policy* based on information obtained about the five drivers— poor driving records, for example. Randall's affidavit states the opposite— that cancellation was based on Kino's general lack of cooperation, including its refusal to execute and return the policy exclusions "to acknowledge that [the five drivers] had unsatisfactory driving records *and would not be covered* by the policy."(Emphasis added.)

■ The summary-judgment record shows in substance that Consumers *accepted the risk* and *issued* the policy *without knowing* the material factors pertaining to Kino's drivers, automobiles, and operations, or the degree of hazard they created in the aggregate. When Consumers' attempts to obtain information about those factors were unsuccessful owing to Kino's want of cooperation, and when Kino did not supply the requested policy exclusions for the five drivers, Consumers cancelled the policy in a letter dated some 138 days after the effective date of the policy. The record shows prima facie a lack of cooperation. The record does *not* show prima facie that the hazard was enlarged beyond what it was on the effective date of the policy;[6] a fortiori, the record does not show such an increase as a matter of law. It shows instead that Consumers never had the information necessary to assess

---

position fails to distinguish between the risk and the hazard.

5. Consumers did not cancel the policy as a result of information obtained about the five drivers. Instead, Consumers kept the policy in force for the time being, presumably because the policy exclusions would have kept the risk commensurate with the premium.

6. We believe the word "increase," found in section (c)(3) of article 21.49–2A of the Insurance Code, necessarily implies an augmentation or enlargement of the hazard between the time the policy is effective and the subsequent point in time when the insurer determines to cancel the policy because of the increased hazard. Tex. Ins.Code Ann. art. 21.49–2A, § (c)(3) (West Supp.1999).

the hazard and resulting risk at either point in time.

■ While we do not rest our decision on that part of section (c)(3) of article 21.49–2A that refers to an increase in hazard that "would produce an increase in rate," we should add the following in view of our remand of the cause. The statute purports by its terms to apply to all commercial automobile-liability policies, whether fixed or variable rate, and suggests no reason for discriminating between the two kinds of policies nor any intention to do so. We believe the correct construction is that the legislature intended to allow cancellation whenever the rate charged under either kind of policy becomes substantially disproportionate to the risk originally assumed by the insurer due to an increase in hazard within the control of the insured.

For the reasons given, we reverse the judgment below and remand the cause to the trial court for proceedings not inconsistent with our opinion.